UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

MAMADOU HAFIZ JALLOW,                          :

                        Plaintiff,      :

      - against -                                  :

OFFICE OF COURT ADMINISTRATION       :
(OCA) and DISTRICT 37 LOCAL 1070,

                              :

                   Defendants.
--------------------------------------------------------x

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____              │
│ DATE FILED: Sept. 4, 2012            │
└─────────────────────────────────────┘
```

**REPORT AND
RECOMMENDATION
TO THE HONORABLE
PAUL A. CROTTY**

10 Civ. 8575 (PAC) (FM)

**FRANK MAAS**, United States Magistrate Judge.

        Plaintiff Mamadou Hafiz Jallow ("Jallow"), a court interpreter formerly

employed by the New York Unified Court System Office of Court Administration

("OCA"), asserts that the defendants – OCA and his union, District Council 37, Local

1070 ("DC 37") (together, the "Defendants") – violated Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), the New York State Human Rights Law,

N.Y. Exec. Law § 290, et seq. ("NYSHRL"), and the New York City Human Rights Law,

N.Y. City Admin. Code § 8-101, et seq. ("NYCHRL"), by requiring him to take a new

proficiency examination and terminating him from his position after he failed to pass that

examination.  (See ECF No. 2 ("Complaint" or "Compl.") at 1, 3).  The Defendants both

have moved to dismiss the Complaint, pursuant to Rules 12(b)(1) and (b)(6) of the

Federal Rules of Civil Procedure, for want of subject matter jurisdiction and failure to

state a claim.  (ECF Nos. 11, 14).  In the alternative, DC 37 seeks summary judgment

pursuant to Rule 56.  (ECF No. 12).

On November 27, 2011, I recommended that Your Honor grant the

Defendants' motions on several grounds, including Jallow's failure to allege adequately

that he exhausted his administrative remedies by filing a timely charge with the Equal

Employment Opportunity Commission ("EEOC") and receiving an EEOC "right-to-sue"

letter before commencing suit.  See Jallow v. Office of Court Admin., ___ F. Supp. 2d

___, 2011 WL 6826375, at *3 (S.D.N.Y. Nov. 27, 2011) ("Jallow I").  Following my

report, Jallow, who had been proceeding pro se, obtained counsel.  (See ECF No. 22).

Jallow's counsel then produced a copy of an EEOC "Intake Questionnaire" that Jallow

purportedly had submitted to the EEOC but only recently discovered in his possession.

(See ECF No. 25).  In light of this additional material, Your Honor referred the matter to

me for a supplemental Report and Recommendation ("R & R").  (See id. at 1).

For the reasons set forth below, OCA's motion to dismiss should be granted

in part and denied in part, and DC 37's motion should be granted in its entirety.

I.     Background

Jallow is one of six former state court interpreters who have brought similar

claims in this Court.  See Trivedi v. N.Y.S. Unified Court Sys. Office of Court Admin.,

818 F. Supp. 2d 712 (S.D.N.Y. 2011). The Court's prior decision in those cases provides

a more complete description of the Defendants and OCA's procedures for testing court

interpreters.  See id. at 720-21, 729-31.  Accordingly, only those facts essential to the

resolution of the Defendants' motions with respect to Jallow are set forth below.  Unless

2

otherwise indicated, those facts are either undisputed or set forth in the light most favorable to Jallow.

Jallow is a black Muslim male originally from Gambia. From February 13, 2003, until around September 8, 2009,[1] Jallow was employed by OCA as a per diem interpreter of French, Woloff, and Fulani. (Compl. ¶¶ II.B, D-E; ECF No. 25 at 3-7 ("Intake Questionnaire")[2] ). After several years of employment, during which Jallow consistently received "excellent" evaluations, OCA required him to take and pass a new proficiency examination. (Compl. ¶¶ II.D-E; Intake Questionnaire at 3). Spanish interpreters were not required to take the new exam. (Compl. ¶ II.E). Jallow alleges that OCA gave "[him] and [his] peers" failing grades on the exam, after which they were terminated. (Id.).

The Pro Se Office of this Court received Jallow's Complaint on November 4, 2010. (See Compl. at 1). Thereafter, on November 27, 2011, I recommended that Your Honor grant both OCA's and DC 37's motions to dismiss because Jallow failed to allege adequately that he had filed a timely EEOC charge and received a right-to-sue

---

[1]    On his form Complaint, Jallow indicated that he was fired in March of 2003. (Compl. ¶ II.E). The Complaint and Intake Questionnaire indicate, however, that the Defendants discriminated against Jallow until September 8, 2009, and that OCA employed Jallow for several years. (Id. ¶ II.B; Intake Questionnaire at 1, 3). I therefore assume for the purposes of this R & R that Jallow's employment with OCA terminated on approximately September 8, 2009.

[2]    The Intake Questionnaire, which has been docketed as an attachment to a letter from Jallow's counsel to Your Honor dated January 18, 2012, consists of a cover page and a four-page form questionnaire. (See ECF No. 25). Citations to the questionnaire treat the cover page as the first page.

3

letter before filing suit.  <u>Jallow I</u>, 2011 WL 6826375, at *3.  As I observed, although

Jallow checked a box on his form Complaint indicating that the EEOC had issued him a

right-to-sue letter, he failed to fill in the date he received it, explaining on a handwritten

attachment that he "forgot" the letter because he was "rushing" to the courthouse out of

concern that he might otherwise be "too late."  <u>Id.</u> at *1 (citing Compl. at 4, 5).  I noted

further that, "prior to the commencement of this action, OCA never was notified that

Jallow had presented a charge of discrimination to the EEOC, nor was it ever advised that

he had been issued a right-to-sue-letter."  <u>Id.</u> at *3.  Indeed, at the time I issued <u>Jallow I</u>,

Jallow had not produced a right-to-sue letter related to his claims to the Court, despite two

telephone conferences during which the subject was raised and having been afforded

additional time to produce a copy of the letter.  <u>See</u> <u>id.</u> at *1-2 & Ex. A.[3]

On January 18, 2012, several weeks after I issued <u>Jallow I</u>, Gregory S.

Antollino, Esq., entered an appearance on Jallow's behalf.  (ECF No. 22).  Mr. Antollino

then furnished the Court with a copy of an EEOC "Intake Questionnaire," signed by

Jallow on October 14, 2009, which Mr. Antollino indicated had only recently been

"discovered" by Jallow.  (ECF No 25).  On the questionnaire, Jallow indicated that the

Defendants had discriminated against him on the basis of his race, national origin, and

color until September 8, 2009.  (Intake Questionnaire at 1, 3).  Jallow also checked a box

---

[3]      I further recommended that any Title VII claim that Jallow might seek to assert against DC 37 be dismissed because Jallow failed to state a plausible claim that DC 37 discriminated against him in violation of Title VII.  <u>Id.</u> at *4.  Because I recommended the dismissal of all of Jallow's federal claims, I also recommended that Jallow's state law claims be dismissed without prejudice.  <u>Id.</u>

on the final page of the questionnaire "authoriz[ing] the EEOC to look into the discrimination" that he described.  (Id. at 5).

At his subsequent deposition, Jallow testified that he had visited an EEOC office in Manhattan on October 14, 2009, to inquire about filing a charge of discrimination, told an employee that he had been fired for discriminatory reasons, and completed the Intake Questionnaire.  (Jallow Dep. at 11-15).[4]  The employee furnished him with copies of the Intake Questionnaire and advised him that the EEOC would contact him.  (Id. at 13-15).  The EEOC failed to contact him afterwards, however, and Jallow did not follow up.  (Id. at 15, 21, 33).  Jallow explained that he erroneously had checked a box on his Complaint indicating that a right-to-sue letter had been issued.  (Id. at 25-26).  In fact, it was not until early 2012 that Jallow went to the EEOC office to obtain a right-to-sue letter, at which time he was told that one would not be issued because he had failed to take the steps necessary to obtain one.  (Id. at 28-33).

---

[4]       Pursuant to my order dated June 5, 2012, (ECF No. 31), OCA's counsel submitted a letter to my Chambers, dated June 21, 2012, attaching copies of the following documents, all dated May 21, 2012:  (i) a letter from EEOC intake supervisor John B. Douglass ("Douglass") advising OCA of the EEOC's decision to file the Intake Questionnaire as a charge; (ii) a notice of the charge of discrimination that the EEOC sent to OCA; and (iii) the EEOC right-to-sue letter issued to Jallow.  These documents recently were docketed as ECF No. 36.  For ease of reference, citations to these documents will refer to the ECF page numbers.

At the same time, OCA's counsel furnished the Court with transcripts of the depositions of Jallow ("Jallow Dep.") and Douglass ("Douglass Dep.").  While the entire deposition transcripts are available in the Open Records Room of this Court, only the pages cited in this R & R are accessible electronically on ECF.  Citations to those deposition excerpts will refer to the pagination of the transcripts.

On May 11, 2012, OCA served the EEOC with a deposition subpoena and a copy of the Intake Questionnaire.  (ECF No. 32 at 2 n.2).  After reviewing the questionnaire, Douglass, the EEOC New York District Office Intake Supervisor, determined that it met the definition of a charge.  (Douglass Dep. at 6, 28, 30, 34).  He further determined that the EEOC had received the Intake Questionnaire on October 14, 2009, as Jallow indicated, because both the EEOC's internal database and an official date stamp on the questionnaire reflected that date, and because a cover sheet that generally was given to "walk-in" complainants accompanied the questionnaire.[5]  (Id. at 30-31, 42). Concluding that the EEOC had erred by not processing the Intake Questionnaire as a charge, Douglass accepted the charge of discrimination for filing and issued Jallow a right-to-sue letter on May 21, 2012.  (See id. at 37, 40-43; ECF No. 36 at 2, 5).  Douglass also sent a notice of the charge and a copy of the right-to-sue letter to OCA, together with a letter stating that "[a] document meeting the definition of an EEOC charge was received by our office on October 14, 2009, but, due to an error on the part of our office, notice was not served . . . according to our usual procedures."  (ECF No. 36 at 2-5).  The letter additionally noted that "[t]he charge is considered timely filed."  (Id. at 2).  Douglass acknowledged, however, that he did not know whether the document was received by the EEOC in the form in which it has been tendered to this Court.  (Douglass Dep. at 34-35, 37).

---

[5]     The EEOC closed the inquiry automatically on its database after ninety days, i.e., January 17, 2010.  (See id. at 57).

6

After Your Honor referred the additional material to me for a supplemental R & R (ECF No. 25), I held conferences on February 10, May 4, and June 5, 2012, during which I set a schedule for further discovery in both this case and the related cases brought by other court interpreters (see ECF Nos. 28, 30, 31).  During the June 5 conference, I additionally directed that counsel could submit letters addressing whether Jallow's case should be dismissed for failure to obtain a timely right-to-sue letter.  (ECF No. 31).  On June 29, 2012, both Jallow and OCA submitted such supplemental letters.  (ECF Nos. 32, 33).

II.    Discussion

A.    Standard of Review

1.    Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of a plaintiff's claims for relief.  Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 511 (S.D.N.Y. 2010) (Lynch, D.J.).  In deciding a Rule 12(b)(6) motion, the Court must accept as true all factual allegations made in a complaint and draw all reasonable inferences in favor of the plaintiff.  Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  A complaint need not contain "detailed factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Nonetheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).

To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).  Determining whether the allegations of a complaint nudge a plaintiff's claims across the line from merely "conceivable to plausible" requires the Court to "draw on its judicial experience and common sense." Id. at 679-80.  In making its assessment, the Court may consider, in addition to a plaintiff's factual averments, any written instrument upon which the plaintiff necessarily relies, regardless of whether it is attached to the complaint or incorporated therein by reference. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).  When a plaintiff is proceeding pro se, the Court also may rely on any opposition papers in assessing the legal sufficiency of the plaintiff's claims.  See Crum v. Dodrill, 562 F. Supp. 2d 366, 373 n.13 (N.D.N.Y. 2008) (citing Gadson v. Goord, No. 96 Civ. 7544 (SS), 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997)).  Furthermore, the Court may take judicial notice of indisputable facts.  See Fed. R. Evid. 201.  Legal conclusions masquerading as factual averments, however, may not be taken into account.  Twombly, 550 U.S. at 555.

The Court must read pro se pleadings "liberally" and interpret them "to raise the strongest arguments" that they may suggest.  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).  "Dismissal of a pro se complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements."  Carvel v. Ross, No. 09 Civ. 722 (LAK) (JCF), 2011 WL 856283, at *8 (S.D.N.Y. Feb. 16, 2011).

8

2.      Rule 12(b)(1)

Under Rule 12(b)(1), a complaint must be dismissed if a court lacks subject matter jurisdiction over the action.  In deciding a Rule 12(b)(1) motion, the Court is not limited to the face of the complaint and may consider evidence outside the pleadings to resolve disputed factual issues.  State Emp. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 77 n.4 (2d Cir. 2007); Phifer v. City of N.Y., 289 F.3d 49, 55 (2d Cir. 2002).  The plaintiff has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists.  Phifer, 289 F.3d at 55 (citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).

When a court is faced with a motion to dismiss pursuant to both Rules, it should "decide the 'jurisdictional question [under Rule 12(b)(1)] first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction.'"  Tirone v. N.Y. Stock Exch., Inc., No. 05 Civ. 8703 (WHP), 2007 WL 2164064, at *3 (S.D.N.Y. July 27, 2007) (quoting Magee v. Nassau Cnty. Med. Ctr., 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)).  Accordingly, I will turn first to the Rule 12(b)(1) motions seeking dismissal of Jallow's Title VII claims against the defendants.

B.      NYSHRL and NYCHRL Claims against OCA

OCA argues that Jallow's claims for relief under NYSHRL and NYCHRL should be dismissed on the ground that the Court lacks subject matter jurisdiction over these claims.

9

Under the Eleventh Amendment to the United States Constitution, a state and its agencies generally are immune from suit in federal court.  See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54-56 (1996).  As the administrative arm of the New York State Unified Court System, OCA is "not a distinct entity amenable to suit, but is an integral part of the state."  Levi v. New York, No. 10-CV-3980 (JG) (RLM), 2010 WL 5559520, at *3 (E.D.N.Y. Dec. 22, 2010) (quoting Winokur v. Office of Court Admin., 190 F. Supp. 2d 444, 450 (E.D.N.Y. 2002)) (internal quotation marks and brackets omitted); see Gollomp v. Spitzer, 568 F.3d 355, 368 (2d Cir. 2009) ("[T]he New York State Unified Court System is unquestionably an arm of the State . . . entitled to Eleventh Amendment sovereign immunity.") (internal quotation marks and citation omitted); accord Anderson v. State of N.Y., Office of Court Admin. of Unified Court Sys., 614 F. Supp. 2d 404, 426 (S.D.N.Y. 2009); Canales-Jacobs v. N.Y. State Office of Court Admin., 640 F. Supp. 2d 482, 498 (S.D.N.Y. 2009).

There are only two exceptions to Eleventh Amendment sovereign immunity, which apply when there has been an explicit and unequivocal waiver of immunity by a state or a similarly clear abrogation of the immunity by Congress.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 (1984).  Title VII abrogates the states' Eleventh Amendment immunity.  See Fitzpatrick v. Bitzer, 427 U.S. 445, 447-48, 456 (1976) (Section 5 of the Fourteenth Amendment authorizes Congress to abrogate States' sovereign immunity under Title VII); Davis v. State Univ. of N.Y., 802 F.2d 638, 640 n.1 (2d Cir. 1986) ("a state and its agencies have been subject to suit under Title VII

since 1972 and have no Eleventh Amendment immunity"); <u>Dillard v. Runyon</u>, 928 F.

Supp. 1316, 1322 (S.D.N.Y. 1996) (through its enactment of Title VII, Congress "waived

the government's sovereign immunity for suits alleging discrimination in a government

workplace on the basis of race, sex, color, religion or national origin"); <u>see also</u> <u>Eshun v.</u>

<u>N.Y. State Dep't of Soc. Servs.</u>, 652 F. Supp. 455, 458-59 (S.D.N.Y. 1987) (rejecting an

argument that a suit against a state agency claiming employment discrimination based on

national origin is barred by the Eleventh Amendment).  Immunity has neither been

waived nor abrogated, however, with respect to Jallow's claims under the NYSHRL and

the NYCHRL.  <u>See, e.g.</u>, <u>Leiman v. State of N.Y.</u>, No. 98 Civ. 5538 (MHD), 2000 WL

1364365, at *7 (S.D.N.Y. Sept. 21, 2000) (no waiver of immunity for NYCHRL claims);

<u>Tuckett v. N.Y. State Dep't of Taxation & Fin.</u>, No. 99 Civ. 0679 (BSJ), 2000 WL

1028662, at *2 (S.D.N.Y. July 26, 2000) (no waiver of immunity for NYSHRL claims).

Accordingly, Jallow's claims under the NYSHRL and the NYCHRL should be dismissed

as against OCA for want of subject matter jurisdiction.

     C.   <u>Title VII Claims</u>

          1.   <u>Exhaustion</u>

     Title VII requires that plaintiffs exhaust their administrative remedies by

filing timely charges of discrimination with the EEOC before they may initiate suits

arising out of their charges.  42 U.S.C. §§ 2000e-5(e)(1), (f)(1); <u>see</u> <u>Falso v. Gates Chili</u>

<u>Cent. Sch. Dist.</u>, 408 F. App'x 494, 495 (2d Cir. 2011); <u>McPherson v. N.Y.C. Dep't of</u>

<u>Educ.</u>, 457 F.3d 211, 213 (2d Cir. 2006).  In Title VII cases in which aggrieved parties

institute proceedings with a State or local agency, a charge of employment discrimination must be filed within 300 days of the last alleged unlawful discriminatory act. See 42 U.S.C. § 2000e-5(e)(1); Haghpassand v. Reutners Am. Inc., 120 F. App'x 859, 861 (2d Cir. 2005); Fields v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 301 F. Supp. 2d 259, 262 (S.D.N.Y. 2004). Furthermore, before filing suit, a plaintiff must receive a right-to-sue letter from the EEOC. McPherson, 457 F.3d at 213-14; see Holowecki v. Fed. Express Corp., 440 F.3d 558, 563 (2d Cir. 2006). The failure to exhaust administrative remedies in this manner constitutes grounds for dismissal under Rule 12(b)(6) of a former employee's Title VII suit. Morgan v. Williams, No. 09 Civ. 3288 (TPG), 2010 WL 1253464, *2 (S.D.N.Y. Mar. 24, 2010); Smart v. Goord, 441 F. Supp. 2d 631, 637-38 (S.D.N.Y. 2006).[6]

A plaintiff who secures a right-to-sue letter need not necessarily exhaust every claim administratively. A claim not expressly raised in an EEOC charge may, however, be brought in federal court only if it is "reasonably related" to the claim filed with the agency. See Butts v. City of N.Y. Dep't of Hous. Pres. & Dev., 990 F.2d 1397,

---

[6]      The Defendants also seek dismissal of the Complaint for want of exhaustion under Rule 12(b)(1) for lack of subject matter jurisdiction. This branch of the Defendants motions must be denied because Title VII's requirement that a charge of discrimination be timely filed with the EEOC "is not a jurisdictional prerequisite to suit in federal court." Francis v. City of N.Y., 235 F.3d 763, 767 (2d Cir. 2000) (emphasis added) (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)). Rule 12(b)(1) therefore is not an available means to obtain the dismissal of Jallow's claims based on his alleged failure to exhaust his administrative remedies. See O'Neal v. State Univ. of N.Y., Health Sci. Ctr. Brooklyn, CV-01-7802 (DGT), 2003 WL 1524664, at *5 (E.D.N.Y. Mar. 24, 2003).

1401 (2d Cir. 1993), superseded on other grounds by statute as recognized in Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 693 (2d Cir. 1998).  A claim is "reasonably related" if it involves conduct that "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  Id. at 1402 (citation and internal quotation marks omitted).

Jallow alleges that the Defendants discriminated against him until September 8, 2009.  He therefore was required to file his charge within 300 days, i.e., by July 6, 2010.  Through his counsel, Jallow now contends that the submission of his Intake Questionnaire in 2009 constituted the filing of his charge.

In some circumstances, courts have permitted an intake questionnaire to satisfy the requirement that a plaintiff timely file a charge with the EEOC.  See Holowecki, 440 F.3d at 566-67; Bey v. I.B.E.W. Local Union No. 3, No. 05 Civ. 7910 (JSR), 2008 WL 821862, at *10 (S.D.N.Y. Mar. 26, 2008).  The relevant EEOC regulations provide that a filing with the EEOC constitutes a charge if it is in written form, identifies the parties, and "generally" describes the alleged discriminatory acts.  29 C.F.R. §§ 1601.9, 1601.12(b).  Furthermore, a later-verified charge may relate back to an otherwise timely filing that includes those elements but lacks the more formal attributes of a charge.  Id.; see Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC, 470 F. Supp. 2d 345, 354 (S.D.N.Y. 2007).  Whatever the initial filing may be, it "must manifest the complainant's intention that the EEOC initiate its investigation and conciliation functions."  Int'l Healthcare Exch., 470 F. Supp. 2d at 354.

In <u>Federal Express Corporation v. Holowecki</u>, 552 U.S. 389 (2008), on which Jallow and OCA both rely, the Supreme Court considered whether an EEOC intake questionnaire was a "charge" within the meaning of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, <u>et</u> <u>seq.</u> ("ADEA").  There, the plaintiff completed a form "Intake Questionnaire" that included basic information about herself and her employer, as well as an allegation that she and other employees had been victims of "age discrimination."  <u>Id.</u> at 394, 404.  The plaintiff also attached a detailed six-page signed affidavit describing the alleged discriminatory practices and requested that the EEOC "force Federal Express to end their age discrimination plan."  <u>Id.</u> at 405.  Although the Court held that the EEOC "is not required to treat every completed Intake Questionnaire as a charge," it found that Holowecki's questionnaire was sufficient.  <u>Id.</u> In so doing, the Court noted that determining whether a document constitutes a charge requires consideration of the extent to which an objective observer would reasonably understand the document as an attempt by the filer to "activate [the EEOC's] machinery and remedial processes."  <u>Id.</u> at 402.  As the Court explained, for a filing "to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee."  <u>Id.</u>  In the Court's view, this "permissive standard," under which "a wide range of documents might be classified as charges," best comported with the design and purpose of the ADEA, which, "like Title VII, sets up a remedial scheme in which

14

laypersons, rather than lawyers, are expected to initiate the process."[7] Id. at 402 (citation and internal quotation marks omitted).

In this case, Jallow's Intake Questionnaire contains the minimal information required by the EEOC regulations. It clearly contains the name of the charged parties and alleges that he was discriminated against based on race, national origin, and color. Additionally, Jallow has testified that he signed and dated the questionnaire on October 14, 2009. The EEOC office evidently received and stamped the questionnaire on that date, and entered Jallow's inquiry on its internal database. (See Intake Questionnaire at 1, 5; Douglass Dep. at 30-31, 42).

Moreover, viewed objectively, the Intake Questionnaire constituted an attempt by Jallow to activate the EEOC's investigatory and conciliatory process, as required by Holowecki. Thus, in his Intake Questionnaire, Jallow briefly set forth the specific factual details of his claims, alleging that he was terminated after six years of "good" to "excellent" job performance when he was forced to take, and failed, a newly-administered exam. (Intake Questionnaire at 3); see Davis v. Columbia Univ., No. 09 Civ. 9581 (HB), 2010 WL 2143665, at *3 (S.D.N.Y. May 26, 2010) (letter attached to

---

[7]        In Holowecki, the Court cautioned that whether the same result should obtain in cases brought under statutes other than the ADEA that also are enforced by the EEOC requires "careful and critical examination" of the relevant regulations. See id. at 393. The regulations that apply to Title VII, 29 C.F.R § 1601, et seq., "bear[] substantial similarity to the ADEA regulations at issue in Holowecki," though there are additional requirements that the charge be in writing, signed, and verified. Price v. City of N.Y., 797 F. Supp. 2d 219, 225 (E.D.N.Y. 2011) (citing 29 C.F.R. § 1601.9). For this reason, district courts in this Circuit have found that the permissive standard announced in Holowecki is applicable to Title VII cases. See id. at 225-26 (collecting cases).

intake questionnaire stating that plaintiff was wrongfully terminated for discriminatory and retaliatory reasons and laying out specific factual details, even if "not quite as specific and direct as the sworn affidavit in Holowecki," is sufficient to demonstrate a request that the EEOC act on his claims).

Jallow further evinced his intent to set in motion the EEOC's administrative process on the final page of the Intake Questionnaire.  On that page, the questionnaire instructed the employee to check a box "to tell [the EEOC] what you would like [the EEOC] to do with the information you are providing with this questionnaire."  (Intake Questionnaire at 5).  After explaining that a charge of discrimination must be filed and that a statute of limitations for filing a charge exists, the questionnaire then indicated in boldface:  "If you want to file a charge, you should check Box 1, below.  If you would like more information before deciding whether to file a charge or you are worried or have concerns about EEOC notifying the employer[] [or] union . . . about your filing a charge, you may wish to check Box 2, below."  (Id.).  Significantly, Jallow checked "Box 1," which states, in relevant part, "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above.  I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name."  (Id.).  In addition, a "Privacy Act Statement" at the bottom of that page explains that one "principal purpose" of the questionnaire is that it "may serve as a charge if it meets the elements of a charge."  (Id. ¶ 4 (citing 29 C.F.R. §§ 1601.12(b), 1626.8(c))).

Notably, the EEOC itself treated the Intake Questionnaire as a charge after OCA brought it to the agency's attention pursuant to its deposition notice. Indeed, as Douglass has explained, the fact that the questionnaire was not processed as a charge appears to have been an error. (ECF No. 36 at 2; Douglass Dep. at 40-43). In these circumstances, and in light of Holowecki's admonition to construe documents filed by an employee permissively "to protect the employee's rights and statutory remedies," 552 U.S. at 406, the Court should find that the Intake Questionnaire is sufficient to constitute a charge of discrimination.

Although Jallow's completed Intake Questionnaire should be construed as a timely charge of discrimination, his religious discrimination claim remains unexhausted. By checking boxes on his Complaint in this action, Jallow indicated that he was discriminated against based on his race, national origin, color, and religion, and specified that he is a Muslim. (Compl. ¶ II.D). On his Intake Questionnaire, however, Jallow had indicated that the only bases for the discrimination against him were race, national origin, and color. (See Intake Questionnaire at 3). Jallow did not check the box for religion, nor did he refer to his religion in his handwritten narratives describing the allegedly discriminatory conduct. Jallow's claim of religious discrimination accordingly must be dismissed under Rule 12(b)(6) because it was not raised with the EEOC in the Intake Questionnaire, and because the claim is not reasonably related to the discrimination claims based on race, national origin, and color that he did raise at that time. See, e.g., Pusey v. Delta Airlines, Inc., No. 09-CV-4084 (ENV) (JO), 2011 WL 1215081, at *1

17

(E.D.N.Y. Mar. 30, 2011) ("The law is well-settled that a federal court claim for religious discrimination is not 'reasonably related' to an EEOC claim for discrimination on the basis of race . . . absent something in the EEOC claim that refers to religion.") (citing cases).

       2.    <u>Discrimination</u>

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  A plaintiff asserting a Title VII claim must satisfy an initial burden of "proving by the preponderance of the evidence a <u>prima facie</u> case of discrimination."  <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981).  Accordingly, "a plaintiff must show:  [a] membership in a protected class, [b] qualification for the position sought, [c] an adverse employment action, and [d] circumstances giving rise to an inference of discrimination."  <u>Ghosh v. N.Y.C. Dep't of Health</u>, 413 F. Supp. 2d 322, 332 (S.D.N.Y. 2006); <u>Pasha v. William M. Mercer Consulting, Inc.</u>, No. 00 Civ. 8362 (RWS), 2004 WL 188077, at *3 (S.D.N.Y. Feb. 2, 2004).  The Second Circuit has described the plaintiff's burden at this initial step as "<u>de minimis</u>."  <u>Zimmermann v. Assocs. First Capital Corp.</u>, 251 F.3d 376, 381 (2d Cir. 2001).

       a.    <u>Claims against OCA</u>

In his <u>pro se</u> Complaint, Jallow alleges that OCA's decision to subject him to a new English examination after years of successful employment as an OCA employee,

and to terminate him following his failure to pass that exam, constituted discrimination on racial, national origin, and color grounds.  (See Compl. ¶¶ II.D-E).  Jallow also has identified the protected classes of which he allegedly is a member.  (See id. ¶ II.D).  Jallow further has alleged that he was qualified to serve as an interpreter and suffered an adverse employment action as a consequence of being terminated from a position that he had held for several years.  (See id. ¶ II.E).  Jallow thus has adequately pleaded three of the four elements of a Title VII claim.

The remaining element requires Jallow to allege that the adverse employment action he suffered – here, termination – occurred under circumstances giving rise to an inference of discrimination.  As to that element, Jallow has alleged that he was subjected to a testing regimen not required of Spanish-speaking interpreters.  Jallow further indicates that he was fired together with a group of interpreters that included, among others, people of Chinese, Greek, Russian, African, European, and Japanese descent.  (Id.).  On this showing, Jallow plainly has failed to plead any discrimination based on race or color.  Construed liberally, however, Jallow's Complaint appears to allege that non-Hispanic interpreters were subjected to harsher treatment.  If so, Jallow appears to have stated – albeit, barely – facts sufficient to warrant an inference that the circumstances surrounding his testing and subsequent termination constituted discrimination based on national origin.  OCA's motion to dismiss Jallow's Title VII discrimination claim therefore should be denied to the extent it is based on his national origin.

b.     Claims against DC 37

To hold a union accountable for an employer's discriminatory conduct under Title VII, a plaintiff must show "(1) that the [union] breached [its] duty of fair representation by allowing an alleged [violation] to go unrepaired and (2) that the [union's] actions were motivated by [discriminatory] animus." Morris v. Amalgamated Lithographers of Am., 994 F. Supp. 161, 170 (S.D.N.Y. 1998) (citing Doolittle v. Ruffo, No. 88-CV-1175, 1990 WL 159850, at *4 (N.D.N.Y. Mar. 27, 1996)); accord Jiggetts v. Allied Int'l Union, No. 07 Civ. 11572 (JSR) (RLE), 2010 WL 2158331, at *3 (S.D.N.Y. Mar. 17, 2010).

In Jallow I, although I considered Jallow's failure to produce a right-to-sue letter dispositive, I further noted that "any Title VII claim that he might seek to assert against DC 37 was also subject to dismissal under Rule 12(b)(6)" because Jallow "failed to state a plausible claim that DC 37 discriminated against him in violation of Title VII." Jallow I, 2011 WL 6826375, at *4.  Indeed, Jallow named DC 37 in the caption and in his list of defendants, but has failed to detail anything that DC 37 allegedly did or failed to do.  None of Jallow's additional submissions have shed any further light on any discriminatory conduct in which DC 37 may have participated.  Any Title VII claims Jallow seeks to assert against DC 37 consequently should be dismissed.

20

D.    Remaining Claims against DC 37

Jallow's Complaint also presses claims against DC 37 under the NYSHRL and NYCHRL.  The standards applicable to claims under the NYSHRL are the same as those applicable to Title VII.  See Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 305 n.3 (2004).  Accordingly, because Jallow has failed to plead a plausible Title VII claim against DC 37, his NYSHRL claims against DC 37 should be dismissed.

Although the same rules previously applied to NYCHRL claims, see id., in 2005 the New York City Council enacted the Local Civil Rights Restoration Act, N.Y.C. Local Law No. 85 (2005), which altered the playing field.  Pursuant to that statute, the NYCHRL must be "construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed."  Id. § 7.  As a consequence, federal law now "provide[s] 'a floor below which the City's Human Rights law cannot fall, rather than a ceiling above which the local law cannot rise.'"  Stevens v. New York, No. 09 Civ. 5237 (CM), 2011 WL 3055370, at *8 (S.D.N.Y. July 20, 2011) (quoting Williams v. N.Y.C. Hous. Auth., 872 N.Y.S.2d 27, 31 (1st Dep't 2009)).  "Nonetheless, a plaintiff must still link the adverse action to a discriminatory or retaliatory motivation."  Joseph v. N.Y.C. Dep't of Corr., No. 10-CV-1265 (NGG) (LB), 2011 WL 1843162, at *9 (E.D.N.Y. May 13, 2011) (citing Williams, 872 N.Y.S.2d at 35).  Here, even if the NYCHRL is liberally construed, Jallow has failed to allege any misconduct on the part of

21

DC 37, let alone make a plausible showing of misconduct motivated by discriminatory animus.  For this reason, DC 37 is entitled to the dismissal of Jallow's NYCHRL claims as well.

III.    Conclusion

          For the reasons set forth above,  DC 37's motion to dismiss (ECF No. 11) should be granted in its entirety.  Additionally, OCA's motion to dismiss (ECF No. 14) should be granted with respect to Jallow's NYSHRL, NYCHRL, and Title VII claims based on religion, race, and color, but denied with respect to his Title VII claim of discrimination based on national origin.

IV.    Notice of Procedure for Filing of Objections to this Report and Recommendation

          The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a) and (d).  Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty and to the chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be directed to Judge Crotty.

The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated:      New York, New York
            September 4, 2012

                                    _____
                                    FRANK MAAS
                                    United States Magistrate Judge

Copies to:

Gregory S. Antollino, Esq.
116 West 22nd Street, 5th floor
New York, New York 10011

Pedro Morales, Esq.
Office of Court Administration
25 Beaver Street, 11th Floor
New York, New York 10004

Steven E. Sykes, Esq.
District Council 37
125 Barclay Street, Room 510
New York, New York 10007